NOT FOR PUBLICATION (Docket No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
CHRISTIAN PAILLERET, :
 :
        Plaintiff, : Civil No. 09-1325 (RBK/JS)
 :
        v. : **OPINION**
 :
JERSEY CONSTRUCTION, INC., :
 :
        Defendant. :
_____ :

**KUGLER**, United States District Judge:

    This matter arises out of Plaintiff Christian Pailleret's termination by Defendant Jersey Construction, Inc. for allegedly exercising and/or seeking to exercise protected health benefits. Plaintiff filed a one count complaint alleging a cause of action under § 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140. Pending before the Court is Defendant's Motion to Dismiss (Docket No. 6). Because the Court finds that Plaintiff has stated sufficient facts to support a prima facie case under § 510, the Motion is denied.

**I.    BACKGROUND**

    The following facts are taken from the Complaint and assumed true.

    Jersey Construction hired Mr. Pailleret around October 2005 as a diesel mechanic. His initial pay was $18.00 per hour, and within the first year of his employment (mid-2006), Mr. Pailleret received a fifty cents an hour raise. Mr. Pailleret's raise was based on performance and

was not an across the board raise for all employees.

Approximately four months later, Mr. Pailleret's wife, Rachel Pailleret, was diagnosed with breast cancer. Mr. Pailleret informed his immediate supervisor, Jim Headley, of his wife's diagnosis immediately thereafter. Mrs. Pailleret subsequently had two surgeries in November 2006, and she began chemotherapy in December 2006.

At the time, the Pailleret's were covered by the Jersey Construction, Inc. Employee Health and Welfare Benefits Plan, which included medical benefits. As a result of Mrs. Pailleret's surgeries, chemotherapy, and subsequent treatment, the Pailleret's submitted reimbursement claims in the "amounts of tens of thousands of dollars." Compl. at ¶ 10.

Almost immediately after Mrs. Pailleret began chemotherapy, Mr. Pailleret began to be assigned various lower level, odd jobs that he had never before been asked to do. Some of the jobs were purportedly "onerous and beneath Mr. Pailleret's skill level," including, for example, powerwashing equipment outside in Januaray in below freezing weather. Id. at ¶ 12. Mr. Pailleret alleges that the new assignments and the new "degrading" work conditions were for the purpose of coercing him to resign so that Defendant did not have to pay benefits. Id. at ¶ 14.

Notwithstanding the adverse working environment, Mr. Pailleret did not resign and remained employed until he was terminated without notice by Mr. Headley. Exactly when this termination occurred is not alleged, though it seems to have occurred sometime in 2007. Mr. Pailleret was terminated on the spot without prior notice, and was instructed to leave the premises immediately. Mr. Headley refused to give any details about the reason for the termination. Mr. Pailleret had never received written warnings before the termination. Whether he received any oral warnings is not alleged.

## II.	STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

## III.	DISCUSSION

While the Complaint does not expressly state the statutory or common law ground for relief, both parties have treated the claim as one arising under ERISA § 510, and the Court will do the same.  Defendant's opposition is essentially threefold: 1) the claim is barred by the

3

employment-at-will doctrine; 2) even if not barred, the claim fails because Defendant did not take adverse action against Plaintiff; and 3) Plaintiff has failed to state more than conclusory legal allegations to support the claim.  Def. br. at 3, 7.  Plaintiff responds by arguing the at-will doctrine is preempted and that he has otherwise stated a plausible claim.  Pl. br. at 2, 6-7.  The Court finds that Defendant's arguments fail and that Plaintiff has stated a claim for relief.  For purposes of clear analysis, the Court will respond to the preemption analysis second.

   A.   § 510

Section 510 of ERISA makes it unlawful for a person to "discharge, fine, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."  29 U.S.C. § 1140.  The purpose of § 510 is to prevent employers from terminating or harassing employees for the purpose of keeping them from obtaining ERISA-protected benefits.  Kowalski v. L & F Prods., 82 F.3d 1283, 1287 (3d Cir. 1996).  To state a claim under § 510, an employee need not prove that the *only* reason for the adverse treatment was to avoid ERISA-protected benefits, but the employee must show that the defendant-employer had the specific intent to violate ERISA.  Gavalik v. Cont'l Can Co., 812 F.2d 834, 851 (3d Cir. 1987).  In other words, a plaintiff must show that "the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits."  Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007) (quotations removed).  In addition to protecting future benefits, § 510 supports a claim where an employee alleges that he was terminated in retaliation for the past exercise of protected rights.  Kowalski, 82 F.3d at 1287-88.

4

When a party has no direct evidence of intent to violate ERISA, courts must use a McDonnell Douglas-Burdine type of burden shifting. Jakimas, 485 F.3d at 785. Under this familiar standard, a plaintiff must first state a prima facie case by showing "(1) the employer committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Id. (quotations removed). If the plaintiff states a prima facie case–which is not an "onerous" burden, id. at 787–the burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the prohibited conduct." Id. at 786 (quotations removed). If the defendant articulates this reason, the burden then shifts back to the plaintiff to show pretext or that the reason is "unworthy of credence." Id. (quotations removed).

In this dispute, Plaintiff has no "smoking gun" evidence of intent, see Gavalik, 812 F.2d at 852; thus to survive the Motion to Dismiss, the Complaint must at least state a plausible prima facie case of retaliation under § 510. Plaintiff has met that burden.

Separating the factual allegations from the legal conclusions, the Court finds the following allegations are relevant to the prima facie case: 1) Plaintiff and his wife were covered by an employee benefit plan; 2) Plaintiff submitted substantial medical bills for reimbursement; 3) shortly thereafter his job duties changed; 4) Plaintiff was terminated without notice; 5) Plaintiff was immediately ask to leave; 6) Plaintiff was not proffered an explanation for the termination; 7) Plaintiff had previously received no written warnings; and 8) Plaintiff was seemingly terminated shortly after he submitted claims.

These facts support a prima facie case. The first element, prohibited conduct, is met since

Plaintiff alleges that he was terminated–clear prohibited conduct.[1]  See 29 U.S.C. § 1140 (prohibiting "discharge").  The third element, attainment of a right, is satisfied since Plaintiff alleges he had previously sought protected benefits and was seemingly going to continue to do so into the future.

The only real dispute of the prima facie case is as to element two, purpose of interfering (or intent).  Defendant argues that the only evidence of intent is proximity–this is, that the adverse action took place shortly after Plaintiff used his health benefits.  See Def. br. at 6-7.  Defendant alleges that proximity alone is insufficient for a prima facie case of retaliation.  Id. at 7.  Plaintiff, however, argues that he "is neither relying on, nor pleading timing alone."  Pl. br. at 8.  The Court agrees.

As an initial matter, Plaintiff could rely on timing alone to show intent provided the timing was "unusually suggestive."  See Farrell v. Planters Lifesavers Company, 206 F.3d 271, 280 (3d Cir. 2000) (discussing causation with retaliation claim under Title VII).  However, since timing is not the sole basis for Plaintiff's claim, the Court need not examine it closely.  See id. at 279 n.5 (holding proximity as evidence of retaliation is a fact-specific inquiry in each case).

---

[1] Curiously, the parties both assert that an employer's attempting to "coerce a resignation" is not prohibited conduct under ERISA.  See Pl. br. at 7; Def. br. at 7.  This mutual assertion is in discord with the law.  See Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 176-77 (3d Cir. 1997) (discussing constructive discharge and § 510); see also McMurtrie v. Specialty Minerals, Inc., No. 09-944, 2009 WL 2579830, at *3 (E.D. Pa. Aug. 19, 2009) (holding "discriminate against" in § 510 "'is a catchall provision, intended to outlaw unfavorable changes in the terms and conditions of employment not otherwise specifically enumerated, including, for example, demotion, transfer, or loss of seniority'" (quoting Peter J. Wiedenbeck, ERISA in the Courts 199 (2008))).  Nevertheless, Plaintiff briefed the pending Motion as if the only prohibited conduct was the termination and not the change in employment conditions.  See Pl. br. at 7 ("While attempting to 'coerce a resignation' does not constitute section §510 [sic] prohibited ERISA-based conduct or retaliation under the ERISA laws, Plaintiff alleges that he was fired without cause or explanation.").  Thus, the Court will limit its analysis to the termination.

Instead, Plaintiff relies on a number of allegations that raise his claim from possible to plausible. Plaintiff alleges that he was assigned different job duties that were beneath his skill level and that were otherwise onerous, almost immediately after he invoked his benefits. See Farrell, 206 F.3d at 280-81 (holding timing and "ongoing antagonism" can form basis of causal link for retaliation claim). Plaintiff alleges that he was terminated without notice and without explanation. Plaintiff also alleges that he was never previously warned–at least in writing–that his job was in peril. Cf. id. (holding "our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence"). Given that these events occurred only after Plaintiff invoked his benefits and evinced an intent to invoke them again, and given that the termination was otherwise sudden and unexplained, a plausible inference arises that the grounds for the termination was an intent to avoid paying additional health benefits and/or an intent to retaliate for already exercised benefits. Either intent is prohibited. See Kowalski, 82 F.3d at 1287-88. While Plaintiff's allegations are far from overwhelming evidence of intent, they are sufficient to show a plausible claim and to thus unlock the doors of discovery.

Therefore, the Court must deny the Motion to Dismiss.

**B.     Employment-At-Will and Preemption**

In light of the above analysis, Defendant's employment-at-will defense does not warrant much discussion. Defendant cannot hide behind the refrain that it can fire for any reason where even Defendant itself acknowledges termination motivated by an intent to interfere with protected rights is prohibited. See Def. br. at 4; see also 29 U.S.C. § 1140; Jakimas, 485 F.3d at 785.

Additionally, Plaintiff's argument that the employment-at-will doctrine is preempted is not worth significant analysis.  Whether or not the defense is preempted, it simply does not apply here.  If a party can show he was terminated for the past exercise of benefits or to prevent the employee from further exercising protected benefits, the employment-at-will doctrine will not shield the employer from liability.  Cf. Kowalski, 82 F.3d at 1287-88.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.


Date:   1-11-2010                                            /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge