<u>**NOT FOR PUBLICATION**</u>                                                                                              (Doc. No. 19)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| CHRISTIAN PAILLERET, | : | |
| Plaintiff, | : | Civil No. 09-1325 (RBK/JS) |
| v. | : | **OPINION** |
| JERSEY CONSTRUCTION, INC., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises out of the alleged termination of an employee because of his association with a disabled person. Presently before the Court is the motion for summary judgment filed by Defendant Jersey Construction, Inc. ("Jersey Construction"). Plaintiff argues that Jersey Construction terminated his employment because he sought to exercise his ERISA-protected right to benefits for his disabled wife. Jersey Construction claims that it terminated Plaintiff's employment for performance-related reasons. For the reasons discussed below, Jersey Construction's motion denying Plaintiff's claims is **GRANTED**.

**I.     BACKGROUND**

Plaintiff began working for Jersey Construction as a diesel mechanic on October 3, 2005 for a wage of $18.00 per hour. Due to his employment, Plaintiff and his family were enrolled as participants in Jersey Construction's group health care plan with Horizon Blue Cross/Blue Shield of New Jersey. The cost of Plaintiff's health insurance plan from January 1, 2006 to June 30, 2006 was $1,012.40 per month, and the cost of Plaintiff's health insurance from July 1, 2006 to

June 20, 2007 was $1,084 per month. From January 1, 2006 to June 30, 2006 and July 1, 2006 to July 30, 2007 Plaintiff deducted $370.00 and $480.00 per month respectively from his salary to pay the cost of his healthcare plan.

In March or April 2006, Plaintiff received a $.50 per hour pay raise. Plaintiff received the raise as part of an across-the-board pay raise given to all Jersey Construction employees. (Def.'s Br. Ex. A ¶ 7; Ex. B; Ex. C ¶ 8). Jersey Construction gave two other employees a $.50 per hour pay raise. The remaining employees in the shop received pay raises ranging from $.75 to $1.50 per hour.

During his tenure with Jersey Construction, Plaintiff experienced a variety of personal and professional problems. Plaintiff's supervisor, Harry Patton, frequently reported to Jersey Construction's equipment superintendent, Jim Headley, that Plaintiff failed to perform basic tasks in a proficient manner. Specifically, Patton reported that Plaintiff: (1) installed incorrect wheel seats on a pick-up truck; (2) installed bolts that were too long and loose on a track idler; (3) attempted to install brake rotors backwards on a pick-up truck; (4) assembled shafts out-of-line on a CAT D-4 dozer, causing the drive line to fail; (5) failed to properly torque the bolts on the undercarriage of a D-3 CAT; (6) forgot to re-install hydraulic filters after taking them off of a CAT D-4 causing oil to spray on the shop and equipment; and (7) installed front-end parts on a tie-rod end assembly without torque on any of the bolts, causing damage that required additional repairs. (Def.'s Br. Ex. C ¶ 4).[1] In addition to those technical problems, Plaintiff had a difficult

---

[1] The general rule in the Third Circuit is that a district court may not consider hearsay statements on a motion for summary judgment. Shelton v. Univ. of Medicine & Dentistry of New Jersey, 223 F.3d 220, 223 (3d Cir. 2000). However, Patton's reports to Headley are not hearsay statements under Federal Rule of Evidence 801(c). Rule 801(c) provides that hearsay "is a statement . . . offered in evidence to prove the truth of the matter asserted." Here, Patton's reports to Headley are admissible as statements to prove that Patton reported performance deficiencies; not that the allegations in each report are actually true. Hatton's reports are relevant to the extent that they demonstrate Headley's knowledge at the time he terminated Plaintiff's employment. Therefore, Patton's reports are admissible evidence this Court may consider on a motion for summary judgment.

2

time operating Jersey Construction vehicles.  On one occasion, Plaintiff hit the overhead canopy of a Commerce Bank drive-through window while operating a company-owned vehicle.  Plaintiff drove the vehicle to the Commerce Bank to cash a personal check.  Plaintiff does not deny a majority of those performance-related deficiencies,[2] and acknowledges that he damaged the company vehicle by hitting the overhead canopy of a Commerce Bank drive-through window.  Headley verbally reprimanded Plaintiff for forgetting to install the hydraulic filters after taking the filters off of a CAT D-4.  (Def.'s Br. Ex. C. ¶ 6).  There is no evidence that Headley counseled Plaintiff after any of Plaintiff's other mistakes.

In addition to his job-related problems, Plaintiff also experienced problems in his personal life.  Sometime during October 2006, Plaintiff notified Headley that his wife was diagnosed with breast cancer.  Due to her condition, Plaintiff's wife received cancer treatment.  Plaintiff testified that on several occasions he submitted her medical bills to Jersey Construction and Horizon Blue Cross/Blue Shield for payment under his health care plan.  (Pailleret Dep. 8:11-24; 9:18-10:5, June 30, 2010).

Sometime after Plaintiff notified Headley of his wife's physical condition, Plaintiff received what he described as various "low[] level, non-mechanic's job tasks."  (Pl.'s Response to Def.'s Statement of Material Facts ¶ 13) (citing Headley Dep. 73:24-74:5; 75:15-17, June 15, 2010).  For example, Plaintiff was required to power-wash construction equipment, sweep floors, and conduct other general shop and equipment clean-up tasks.  The parties dispute whether Jersey Construction required all shop employees to perform those tasks.  Headley claims that he required all employees to perform those tasks.  By contrast, Plaintiff claims that Jersey

---

[2] Plaintiff offers evidence that one of the performance deficiencies Defendant cites was the result of Defendant's negligence.  On one occasion, Headley told Plaintiff that he improperly placed the wrong part on a truck.  (Headley Dep. 88:3-89:2, June 15, 2010).  Later, Headley apologized to Plaintiff because the part Plaintiff installed on the truck was a "faulty part," and acknowledged that Plaintiff identified that the part was faulty.  (Id.).

3

Construction has no written policy that all mechanics's must power-wash equipment. Plaintiff also highlights that Headley was unaware of the specific tasks that Plaintiff was required to perform, and that Kristin Whitmyer Thompson, the company Chief Operating Officer, could not pinpoint other employees who were required to perform general shop and equipment clean-up tasks. Plaintiff points to no evidence that the shop foreman, Patton, did not assign those clean-up tasks to other employees as per Headley's directive.

On March 28, 2007, Headley terminated Plaintiff's employment without notice, and refused to provide Plaintiff with an explanation for his termination. In a deposition, Headley testified that he terminated Plaintiff due to poor performance. Plaintiff received no written warnings prior to his termination.

On March 23, 2009, Plaintiff filed the Complaint against Jersey Construction. (Doc. No. 1). The Complaint alleges that Jersey Construction interfered with Plaintiff's ERISA-protected right to medical benefits by terminating his employment. (Compl. ¶ 19, 20). Jersey Construction moved to dismiss the Complaint on June 25, 2009. (Doc. No. 6). The Court denied Jersey Construction's motion on January 11, 2010. (Doc. Nos. 10, 11). On March 25, 2010, Plaintiff filed the Amended Complaint alleging claims under § 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 to -49. (Doc. No. 14). Jersey Construction moved for summary judgment on October 18, 2010. (Doc. No. 19). The parties submitted their respective briefs and the motion is ripe for review.

**II.     STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

#### A.  Plaintiff's § 510 Claim

Section 510 of ERISA makes it unlawful for a person to "discharge, fine, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."  29 U.S.C. § 1140.  The purpose of § 510 is to prevent employers from terminating or harassing employees to prevent them from obtaining ERISA-protected benefits.  Kowalski v. L & F Prods., 82 F.3d 1283, 1287 (3d Cir. 1996).  To state a claim under § 510, an employee need not prove that the sole reason the employer mistreated the employee was to avoid ERISA-protected benefits, Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 785 (3d Cir. 2007) ("[A] plaintiff need not prove that the sole reason for his termination was to interfere with pension rights.") (internal quotation marks omitted), however, the employee must show that the defendant-employer had the specific intent to violate ERISA, Gavalik v. Cont'l Can Co., 812 F.2d 834, 851 (3d Cir. 1987) (emphasis added).  In other words, a plaintiff must show that "the employer made a conscious decision to interfere with the employee's attainment of [ERISA] benefits."  Jakimas, 485 F.3d at 785 (internal quotations omitted).  "Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510."  Id.  Rather, an

employee must put forth "'some additional evidence' suggesting that interference with ERISA benefits was a 'motivating factor' in the employer's decision." Balmat v. Certain Teed Corp., 338 F. App'x 256, 259 (3d Cir. 2009) (quoting Jakimas, 485 F.3d at 785).

A party may prove specific intent through the use of direct evidence or circumstantial evidence. Gavalik, 812 F.2d at 852 (noting that "[i]n most cases . . . specific intent to discriminate will not be demonstrated by 'smoking gun' evidence" and, as a result, "the evidentiary burden . . . may . . . be satisfied by the introduction of circumstantial evidence."). When a party has no direct evidence of intent to violate ERISA, courts must use the McDonnell Douglas burden-shifting framework. Jakimas, 485 F.3d at 785. Under that familiar standard, the plaintiff states a prima facie case by showing "(1) the employer committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Id. (internal quotation marks omitted). If the plaintiff states a prima facie case – which is not an "onerous" burden – then the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the prohibited conduct." Id. at 786-87. If the defendant satisfies its burden, the burden then shifts back to the plaintiff to show by a preponderance of the evidence "that the reason articulated by the defendant is merely pretextual." Id. (internal quotation marks omitted). In order to meet that burden, the plaintiff must "either directly . . . persuad[e] the court that the discriminatory reason more likely motivated the employer or indirectly [persuade the court] by showing that the employer's proffered explanation is unworthy of credence." Id. (internal quotation marks omitted). A "[p]laintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action to create genuine issues of material fact as to whether the proffered reasons for termination were pretextual."

7

Balmat, 338 F. App'x at 259-60 (internal quotation marks omitted).

      Plaintiff argues that the timing of his termination was unduly suggestive of discriminatory intent because Jersey Construction gave him undesirable jobs and terminated his employment shortly after he notified Jersey Construction that his wife was disabled. In addition, Plaintiff argues that Jersey Construction's proffered reasons for terminating his employment were pretextual. Specifically, Plaintiff highlights that: (1) neither Headley nor Thompson could identify other mechanics who were required to perform "lower level odd jobs" such as power-washing equipment in extremely cold weather; (2) Jersey Construction paid a larger amount for health coverage for employees with benefits; (3) Jersey Construction never notified Plaintiff that his performance was deficient prior to terminating him, and (4) Jersey Construction failed to provide Plaintiff with any explanation for his termination. (Pl.'s Br., at 24). Jersey Construction responds that summary judgment is appropriate because: (1) there is no evidence that it terminated Plaintiff's employment with specific intent to interfere with his ERISA-protected rights, and (2) even if Plaintiff can prove a prima facie case of discrimination, Jersey Construction offered adequate evidence that it terminated Plaintiff because of his deficient performance as a mechanic.

      In this case, there is no "smoking gun" evidence of specific intent. Therefore, the Court must examine the record to locate circumstantial evidence of intent. Courts in this Circuit have held that "[e]conomic benefits enjoyed by defendants when pension benefits are cancelled can be circumstantial evidence of specific intent, particularly when other circumstances make that cancellation suspicious." Makenta v. Univ. of Pennsylvania, 88 F. App'x 501, 505 (3d Cir. 2004) (citing Einhorn v. AT & T Corp., 248 F.3d 131, 149-50 (3d Cir. 2001)). Nevertheless, "vague allegations of malicious termination, unsupported by any facts, are insufficient to support

a claim for violation of Section 510." Id. (quoting Romero v. SmithKline Beecham, 309 F.3d 113, 119 (3d Cir. 2002)).  Furthermore, a plaintiff's "mere subjective belief as to the defendant's motives [is] insufficient" to support a § 510 claim.  Harrigan v. Key Bank, No. 05-3302, 2008 WL 2354976, at *9 (D.N.J. June 4, 2008) (citing Makenta, 88 F. App'x at 505).  Finally, "where the only evidence that an employer specifically intended to violate [Section 510] is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged [the employee]."  Makenta, 88 F. App'x at 505.

    Here, the circumstantial evidence is far too vague to support a finding that Jersey Construction terminated Plaintiff's employment in order to interfere with Plaintiff's ERISA-protected benefits.  The evidence demonstrates that Plaintiff and his wife were covered by Jersey Construction's group health insurance plan, and that Plaintiff sought recovery of certain medical expenses because of his wife's condition.  Moreover, Plaintiff claims that one year after he notified Jersey Construction of his wife's condition, Jersey Construction assigned him a variety of menial tasks and eventually terminated his employment.  However, Plaintiff offers no evidence that Jersey Construction took those actions for the specific purpose of interfering with his ERISA-protected rights.  Plaintiff offers no evidence that Headley considered Plaintiff's wife's condition or the cost of her health care coverage when he decided to terminate Plaintiff's employment.  Moreover, there is no evidence that Jersey Construction was unwilling to pay, or incapable of paying Plaintiff's benefits under the Blue Cross/Blue Shield health care plan. Furthermore, there is no evidence that Headley sought to deny Plaintiff or any other employee at Jersey Construction ERISA-protected benefits or otherwise interfere with a Jersey Construction employee's ability to exercise his or her ERISA-protected benefits.  Instead, Plaintiff merely

speculates that Jersey Construction terminated his employment in order to interfere with his ERISA-protected rights. Without more, Plaintiff's unsupported allegations that Jersey Construction took those actions with specific intent to deny Plaintiff his ERISA-protected rights are insufficient to survive a motion for summary judgment. Harrigan, 2008 WL 2354976, at *10 (citing Makenta, 88 F. App'x at 505); Grogan v. Duane, Morris & Heckscher, No. 90-4105, 1991 WL 98888, at *4 (E.D. Pa. 1991).

The strongest circumstantial evidence that may support a finding of specific intent is the fact that Jersey Construction pays a larger fee for the health benefits of employees with dependents. (Thompson Dep., 48:16-50:20, Aug. 12, 2010). Because Jersey Construction would be required to pay more for Plaintiff's health coverage than a similarly situated employee with no dependents, Jersey Construction has an incentive to terminate Plaintiff's employment to preserve its financial resources. However, that argument is unpersuasive because the mere fact that an employer has an <u>incentive</u> to terminate an employee does not mean that the employer <u>actually</u> terminated that employee for the specific purpose of interfering with ERISA-protected rights. See Makenta, 88 F. App'x at 505; Harrigan, 2008 WL 2354976, at *10 (acknowledging that defendants "may have had an incentive to interfere with plaintiff's eligibility [for ERISA-protected benefits]" but finding that a mere incentive alone, without more, is insufficient to support a § 510 claim). Thus, the evidence is too vague and speculative to support Plaintiff's § 510 claim.

Plaintiff's argument that the timing of his termination is unusually suggestive is also unavailing. Generally, an employee may rely on the timing of an adverse employment action if the timing is unusually suggestive. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). However, generally an adverse employment action is "unusually suggestive" of an

impermissible motive when it occurs a few days after the protected activity.  See Rooks v. Alloy Surfaces Co., Inc., No. 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 6, 2010) ("[w]hen a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity.") (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  In this case, approximately six months elapsed between the time when Plaintiff notified Headley that his wife was disabled and when Jersey Construction terminated his employment.  (Pl.'s Br. at 1, 24) (noting that Plaintiff notified Jersey Construction that his wife was ill in October 2006, and Jersey Construction terminated his employment on March 28, 2007).  Thus, Plaintiff cannot prove, through timing alone, that Jersey Construction terminated his employment to deny him ERISA-protected rights.

Furthermore, the other evidence Plaintiff offers is far too attenuated to support an inference of specific intent.  First, Plaintiff highlights the fact that neither Headley nor Thompson could identify any employees who received the additional duties Plaintiff received after he notified Headley of his wife's condition.  Plaintiff points to evidence that during their respective depositions, both Headley and Thompson could not identify specific employees who were assigned certain clean-up tasks such as stocking shelves with parts, painting the floor and the walls, and power-washing vehicles during the winter.  (Pl.'s Response to Def.'s Statement of Material Facts ¶ 13).  However, Headley's own testimony belies that argument.  Headley testified that all shop employees were required to power-wash construction equipment during the winter months, and perform other tasks such as sweeping floors, running parts, and general shop and equipment clean-up.  (Def.'s Br. Ex. A ¶ 11; Ex. C ¶ 11; Headley Dep. 38:4-8, 41:7-12, June 15, 2010).  Headley also testified that both he and Patton power-washed vehicles in the winter.  (Headley Dep. 38:25-39:2, June 15, 2010).  In addition, Headley testified that each employee at

11

Jersey Construction performed other tasks around the shop such as painting equipment, and provided specific examples of employees who painted equipment in the shop.  For example, Patton painted a company truck, and Charles Wilson painted some of the equipment he used while welding.  (Headley Dep. 46:8-23, June 15, 2010).  Thus, the record contradicts Plaintiff's assertion that Headley treated him unfairly by assigning him various clean-up tasks.

      Second, Plaintiff highlights the fact that Jersey Construction terminated him without notice and failed to provide him with any feedback after he repeatedly made mistakes in the shop.  However, those facts do not create a material issue of fact regarding whether Jersey Construction terminated him specifically because of his wife's disability.  As previously noted, Plaintiff must point to some evidence that Jersey Construction terminated him without notice for the purpose of interfering with ERISA-protected rights.  See Makenta, 88 F. App'x at 505 ("[V]ague allegations of malicious termination, unsupported by any facts, are insufficient to support a claim for violation of Section 510.") (quoting Romero v. SmithKline Beecham, 309 F.3d 113, 119 (3d Cir. 2002)).  Although Jersey Construction's failure to provide Plaintiff with an explanation for his termination or feedback after each of his performance deficiencies may allow for the possibility that Jersey Construction terminated Plaintiff for some impermissible purpose, without more, those facts provide no evidence that Jersey Construction terminated Plaintiff specifically to interfere with ERISA-protected benefits.  Thus, Jersey Construction's failure to provide Plaintiff with notice prior to terminating him and Jersey Construction's failure to provide performance feedback does not create a material issue of fact concerning it's specific intent to interfere with Plaintiff's ERISA-protected benefits.

      In sum, because Plaintiff fails to offer evidence upon which a reasonable jury could conclude that Jersey Construction terminated his employment for the specific purpose of

interfering with his ERISA-protected rights, the Court will grant Jersey Construction's motion for summary judgment on Plaintiff's § 510 claim.

### B. Plaintiff's NJLAD Claim

The NJLAD prohibits employment discrimination on account of disability.  Potente v. Cnty. of Hudson, 900 A.2d 787, 791 (N.J. 2006) (citing N.J. Stat. Ann. § § 10:5-4.1 to 29.1 (West 2006)).  Under the NJLAD, there are two "distinct categories of disability discrimination claims," namely (1) failure to accommodate an employee's disability; and (2) disparate treatment.  Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 655 (N.J. Super. Ct. App. Div. 2002).  The NJLAD affords protection to both disabled persons as well as individuals associated with disabled persons.  Downs v. U.S. Pipe & Foundry Co., 441 F. Supp. 2d 661, 665 (D.N.J. 2006) ("In the absence of any contrary authority, this Court concludes that the New Jersey Supreme Court would hold that NJLAD bars employment discrimination based upon a person's association with a person with disability.").

Where there is no direct evidence of unlawful discrimination, New Jersey courts have adopted the McDonnell Douglas burden shifting framework.  Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 906-907 (N.J. 1990); Victor v. New Jersey, 952 A.2d 493 (N.J. Super. Ct. App. Div. 2008) (analyzing failure to accommodate claim); see Bell v. KA Indus. Servs., 567 F. Supp. 2d 701 (D.N.J. 2008) (analyzing disparate treatment claim).  This framework consists of three stages:

> First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (internal quotations omitted). This tripartite framework shifts the burden of production from the plaintiff to the defendant and then back again to the plaintiff. However, "[w]hile the burden of production may shift, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

Although courts in New Jersey that have analyzed disability discrimination claims pursuant to the NJLAD have "looked to . . . federal law as a key source of interpretive authority," New Jersey courts do not apply the McDonnell Douglas framework "literally, invariably, or inflexibly." Grigoletti, 570 A.2d at 906-907. Instead, courts have modified the analysis where appropriate, most notably in defining the elements of a plaintiff's prima facie case. Id. at 907 (citing Erickson v. Marsh & McLennan, 569 A.2d 793 (N.J. 1990)).

**1. ERISA Preemption**

As previously mentioned, § 510 prohibits the "discharge of a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140. A claim of discriminatory discharged premised upon a theory that the defendant discharged the plaintiff in order to interfere with the plaintiff's ERISA-protected rights comes under § 510. Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 677 (3d Cir. 2000).

Section 510 provides: "The provisions of [section 502] of this title shall be applicable in the enforcement of this section." 29 U.S.C. § 1140. As a result, "any state claim that falls within Section 510 is necessarily within Section 502." Wood, 207 F.3d at 677. Section 502(a) is

ERISA's civil enforcement provision.³ The fact that all state law claims within § 510 are also within § 502 is critical to this case because § 502 completely preempts all conflicting state law claims. Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) ("[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."); cf. Wood, 207 F.3d at 678 (finding that removal of plaintiff's state claim to federal jurisdiction was proper because "ERISA Section 502(a) completely preempts a state claim . . . ."); Pascak Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004) (noting that "ERISA's civil enforcement mechanism, § 502(a), is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.") (internal quotation marks omitted).

Thus, a § 510 plaintiff cannot bring an NJLAD claim based upon a theory that the defendant interfered with his ERISA-protected rights. In Wood, the plaintiff brought an NJLAD claim in state court alleging that his employer terminated him in order to avoid paying ERISA-protected benefits. 207 F.3d at 675. The plaintiff's complaint alleged that:

> [T]he real reason that . . . [the defendant] terminated [the plaintiff's] employment . . . was its knowledge that, because [the plaintiff] was fifty-one years old, and had more than twenty years of service with [the defendant], [the plaintiff] was about to become eligible for full retirement benefits. Defendant . . . knew that the vesting of those benefits would require it to continue to be responsible for the medical expenses of the plaintiff and of his dependents, including the plaintiff's son, Matthew Wood.

Id. at 677. The defendant removed the case to federal court asserting that ERISA preempted

---

[3] See Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc., No. 10-5216, 2011 WL 1343047, at *3 (D.N.J. Apr. 07, 2011) (describing ERISA's enforcement provision and outlining the two-part test used to determine whether ERISA preempts a state law).

Plaintiff's NJLAD claim.  Id.  Thereafter, the plaintiff moved to remand the case back to state court.  Id.  The district court denied the plaintiff's motion to remand, holding that ERISA completely preempted the plaintiff's NJLAD claim.  Id. at 675.  The Third Circuit Court of Appeals affirmed the district court's judgment, finding that because the plaintiff's NJLAD claim provided no rationale for the defendant's allegedly discriminatory treatment other than "to avoid paying benefits [to the plaintiff] and his dependents," § 510 completely preempted the plaintiff's NJLAD claim.  Id. at 677-78.  The Court also held that "a state law claim may fall within Section 502(a) and thus be completely preempted even if the plaintiff asks for relief that is not available under Section 502(a)."  Id. at 678.

In this case, Plaintiff seeks relief under both the NJLAD and ERISA.  With respect to Plaintiff's NJLAD claim, it is unclear from the Complaint whether Plaintiff proceeds upon the theory that Jersey Construction discriminated against him in order to interfere with is ERISA-protected rights, or solely because Plaintiff's wife is disabled.  The Complaint alleges:  "As a result of Mrs. Pailleret's surgeries, chemotherapy and subsequent treatment, [Mr. and Mrs. Pailleret] submitted claims for reimbursement of medical expenses in the amounts of tens of thousands of dollars," and "[a]lmost immediately after Mrs. Pailleret began chemotherapy in December, 2006, Mr. Pailleret began to be assigned various lower level, odd jobs which he had never been asked to do before."  (Am. Compl. ¶¶ 13, 14).  Furthermore, the Complaint alleges that "Defendant's actions were unlawfully discriminatory towards Mr. Pailleret based on his association with his disabled wife."  (Id. ¶ 27).

Like the Plaintiff in Woods, who brought an NJLAD claim that was subject to § 510, here, it appears that Plaintiff's NJLAD claim is based upon the theory that Jersey Construction discharged him in order to interfere with his ERISA-protected benefits.  Thus, to the extent that

16

Plaintiff bases his NJLAD claim upon the theory that Jersey Construction discharged him for the specific purpose of interfering with his ERISA-protected benefits, Plaintiff's claim is preempted by ERISA.

### 2. Disability Discrimination

Having disposed of any potential NJLAD claim resulting from Plaintiff's ERISA-protected rights, the Court must determine whether a reasonable jury could conclude that Jersey Construction discriminated against Plaintiff based solely on Plaintiff's association with his disabled wife. To properly analyze that claim, the Court must apply the McDonnell Douglas framework.

As Plaintiff correctly notes in his brief, in order to establish a prima facie case of discriminatory discharge, a party must prove that (1) he belongs to a protected class; (2) he applied for or held a position for which he was objectively qualified; (3) he was not hired or was terminated from that position; and (4) the employer sought to, or did fill the position with a similarly-qualified person. Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002) (emphasis added).

Here, Plaintiff fails to establish a prima facie case because there is no evidence that Jersey Construction sought to replace or replaced him with a similarly qualified person. In the opposition brief, Plaintiff goes to great lengths to invalidate Jersey Construction's stated reasons for terminating Plaintiff's employment by highlighting the fact that Jersey Construction: (1) terminated Plaintiff without prior notice or explanation; and (2) assigned Plaintiff menial, undesirable tasks after he notified Headley of Mrs. Pailleret's condition.

However, Plaintiff fails to point to any evidence that Jersey Construction sought to replace or replaced him with a candidate with no disabled dependents. In fact, the sole evidence

that Plaintiff highlights is a complete misrepresentation of the record.  In the opposition brief, Plaintiff states:  "Thompson did not dispute whether Defendant sought another to perform the same work after Plaintiff was terminated."  (Pl.'s Br. at 19) (citing Thompson Dep. 69:12-14; Aug. 12, 2010).  To support that assertion, Plaintiff offers the deposition testimony of Defendant Kristin Whitmyer Thompson, the Chief Operating Officer of Jersey Construction.  According to the deposition transcript, when asked by Plaintiff's attorney "[d]id New Jersey Construction hire anyone to replace Christian Pailleret," Thompson replied "I don't know."  (Thompson Dep. 69:12-14, Aug. 12, 2010).  Plaintiff attempts to use that verbal exchange as evidence that Jersey Construction sought to replace, or replaced, him with a similarly qualified candidate.  The Court is perplexed by Plaintiff's conclusion that Thompson's disavowal constitutes a concession that Jersey Construction sought to replace Plaintiff with a person who was not associated with a disabled person.  Thompson's testimony proves only that she did not know whether Jersey Construction hired a person to replace Plaintiff.  Therefore, because there is no evidence that Jersey Construction sought to replace, or replaced, Plaintiff with a similarly qualified person, Plaintiff's NJLAD claim fails.

**IV.    CONCLUSION**

For the foregoing reasons, Jersey Construction's motion for summary judgment on Plaintiff's NJLAD and ERISA claims is **GRANTED**.  An appropriate order shall issue today.


Date:   4/19/11                                                          /s/ Robert B. Kugler
                                                                                                 ROBERT B. KUGLER
                                                                                                 United States District Judge